**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILLIAM F. SEVERINO, III, | : | CIVIL ACTION NO. 10-5707 (MLC) |
| | : | |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| BORO.SAYREVILLE, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**COOPER, District Judge**

Plaintiff <u>Pro Se</u>, William Severino, III ("Plaintiff")
commenced this action in New Jersey Superior Court against
defendants, Borough of Sayreville (improperly pleaded as
"Boro.Sayreville") ("Sayreville"), Chief Szkodny, Patrolman
Theile and Patrolman Pavlik, ("Patrolmen"), and two employees of
the Sayreville Municipal Court, Colette Solinski (improperly
pleaded as "C. Solinski") ("Solinski") and Alma Lesinski
(improperly pleaded as "E. Lipski") ("Lesinski") ("Admin
Defendants") (collectively, "Defendants").  Plaintiff asserts
claims for, <u>inter alia</u>, false arrest, malicious prosecution,
abuse of process, gender discrimination, and due process
violations (presumably under 42 U.S.C. § ("Section") 1983).
(Dkt. entry no. 1, Compl.)  Defendants removed the action to this
Court and now move for summary judgment in their favor, pursuant
to Federal Rule of Civil Procedure ("Rule") 56.  (Dkt. entry no.
1, Notice of Removal; dkt. entry no. 8, Def. Br.)  The Court

determines the motion without oral argument, pursuant to Rule 78(b).  The Court will grant the motion in part and deny the motion in part, for the reasons stated herein.

## BACKGROUND

Two separate incidents give rise to this action.  First, Severino alleges that on September 13, 2008, he summoned the police in order to file a domestic dispute report against his girlfriend, but instead the Patrolmen arrested him.  (Compl. at 3; Def. Br. at 4.)  Severino further alleges that a week later, he sent letters to Chief Szkodny and Sayreville, regarding the police department's treatment of male victims of domestic violence.  (Compl. at 5; Def. Br. at 4.)  On January 8, 2009, Severino participated in a settlement conference in another matter involving Sayreville and its police officers ("Settlement Conference"), which resulted in a Settlement Agreement and Release ("Agreement") signed by Severino on June 21, 2009.  (Def. Br. at 4-5; dkt. entry no. 8, Mory Cert., Ex. A, Agreement.)

Although the Settlement Conference was convened to resolve a different litigation, the Agreement states that the Sayreville Police Department and its employees, among others, are released and forever discharged for "any and all actions, causes of action, suits, claims, charges or complaints, known or unknown, which [Severino] has, may have, or claim to have . . . for everything that has occurred up to January 8, 2009, the day of

2

the Settlement Conference." (Agreement at 4.) It continues "Plaintiff acknowledges that this is a General Release and includes but is not limited to claims set forth in the Lawsuit." (Id.) The Agreement ends with a statement in bold, under which Severino signed, stating "Defendant has advised me in writing to consult with an attorney prior to executing this Agreement and Release . . . ." (Id. at 8.)

Severino's second claim derives from his receipt of a notice of a court date at Sayreville Municipal Court on October 9, 2009. (Compl. at 6; Def Br. at 5; dkt. entry no. 10, Pl. Opp'n, Ex. F, Notice of Court Date.) When he arrived, the Admin Defendants allegedly told him there was no court that day and that it should have read October 19, 2009. (Compl. at 6; Def Br. at 5.) Severino claims he attempted to reschedule his court date, but to no avail, and as a result of his missed appearance he alleges he received (1) a warrant for his arrest, (2) a notice his bail was revoked, and (3) a notice of his suspended driver's license. (Compl. at 6; Pl. Opp'n, Ex. E, Notice of Suspension.)

Severino claims he called Middlesex County Superior Court and spoke to a "Dave," who in turn allegedly spoke to the "clerks of the Sayreville Municipal Court," who allegedly claimed the October 9 court date never existed. (Compl. at 7.) Severino contends that when he sent Dave his original court notice, Dave "wasn't very happy that he was lied too [sic] by the Sayreville

3

court clerks." (Id.)  Then, Severino claims, Dave called the
Sayreville Municipal Court on November 2, 2009, and somehow they
were "ordered to [rescind] everything and send [him] a new court
date]" where he subsequently "won trial." (Id.; Pl. Opp'n at 3.)
However, Severino claims that because the Sayreville Municipal
Court and the "Court administrators" failed to rescind his
driver's license suspension, he unjustly received fines,
insurance penalties, and points on his driver's record when he
was pulled over on November 16, 2009. (Compl. at 7-8.)

Severino alleges (1) false arrest, false imprisonment,
malicious prosecution, abuses of process, and "Refusal to File
Complaints Under DVA" against the Patrolmen, (2) gender
discrimination and refusal to file complaints against Chief
Szkodny and Sayreville, and (3) abuse of process, retaliatory
actions, and due process violations against the Admin Defendants.
(See Compl.)  He demands monetary damages, as well as injunctive
and declaratory relief. (Id. at 7-8.)[1]  Defendants argue the
claims against Sayreville, Chief Szkodny, and the Patrolmen are
barred by the Agreement and the New Jersey Tort Claims Act
("NJTCA"), and that state and federal immunities, as well as the
NJTCA, shield the Admin Defendants as to the claims asserted
against them. (Def. Br. at 7, 14-15.)

───────────────

[1] However, the requests for declaratory relief simply ask
for findings of liability, and the injunctive requests are all of
a corrective, retrospective nature. (See Compl. at 7-8.)

**DISCUSSION**

I.   **Summary Judgment and Section 1983 Standards**

The standard for a motion for summary judgment is well-settled and will be briefly summarized.  Rule 56 provides that summary judgment is proper if there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  In making this determination, the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor."  United States ex rel. Josenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (citing Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir. 2001)).

The movant has the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant may satisfy this burden by showing "that there is an absence of evidence to support the nonmoving party's case" when the non-moving party bears the ultimate burden of proof at trial.  Id. at 325.  Once the movant has met this burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  Id. at 324.

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state

law to deprive him or her of a right secured by the United States Constitution or the laws of the United States.  <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  <u>Id.</u>; <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996).

For a plaintiff's Section 1983 claims to survive a motion for summary judgment there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law, or (2) deprived the plaintiff of a federal right.  <u>Groman</u>, 47 F.3d at 633.  "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  <u>Id.</u> at 638.  Police officers and court employees are state actors.  <u>See</u> <u>Gale v. Storti</u>, 608 F.Supp.2d 629, 634 (E.D. Pa. 2009); <u>Limehouse v. Delaware</u>, 144 Fed.Appx. 921, 923 (3d Cir. 2005).

## II.  Claims Against Sayreville, Chief Szkodny, and the Patrolmen

### A.  Counts One, Two, Four, Five, and Six

Sayreville, Chief Szkodny, and the Patrolmen argue that the claims against them arising out of Severino's September 13, 2008 arrest, except for count three, are barred because the Agreement releases all claims for events occurring before January 8, 2009.  (Def. Br. at 7.)  They further argue they are entitled to summary judgment on count three, malicious prosecution, because Severino

6

failed to properly file a Notice of Claim under the NJTCA.  (Id. at 13.)  Severino argues that he left the Settlement Conference "under the impression that the [Agreement] excluded the September 2008 arrest" and that it is a question of material fact "whether or not plaintiff was told at the conference hearing that the September 24, 2008 arrest? [sic] was excluded."  (Pl. Opp'n at 2.)  Moreover, he argues he submitted a timely tort claim.  (Pl. Opp'n at 3; Id., Ex. A, 2008 Claim.)

"[A]n agreement to settle a law suit, voluntarily entered into, is binding upon the parties . . . ."  Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970).  In New Jersey, a settlement agreement between parties to a lawsuit is a binding legal contract.  Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (citations omitted).  As such, a federal court shall apply state law to the construction and enforcement of a settlement agreement.  Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F.Supp. 342, 348 (D.N.J. 1996).  New Jersey courts generally disallow vacating settlement agreements absent a showing of fraud, mutual mistake, or other compelling circumstances.  Nolan, 120 N.J. at 472.  Before vacating a settlement agreement New Jersey courts require "'clear and convincing proof' that the agreement should be vacated."  Measuring & Monitoring Servs., Inc. v. Watt Busters, Inc., No. 03-4820, 2006 WL 1644857, at *2 (D.N.J. June 5, 2006); see also Brundage v. Estate of Carambio,

195 N.J. 575, 601 (2008) ("settlements will usually be honored 'absent compelling circumstances'"); <u>Grow Co. v. Chokshi</u>, 403 N.J.Super. 443, 464 (N.J. App. Div. 2008) ("the settlement of lawsuits, as a policy matter, ranks high").  However, "[i]f a settlement agreement is achieved through coercion, deception, fraud, undue pressure, or unseemly conduct, or if one party was not competent to voluntarily consent thereto, the settlement agreement must be set aside."  <u>Brundage</u>, 195 N.J. at 600.

Severino has not demonstrated any compelling circumstances or provided clear and convincing proof that would warrant the Court to vacate the Agreement.  Severino alleges when he left the Settlement Conference he was under the impression that the September 2008 arrest was not included.  (Pl. Opp'n at 2.)  However, Plaintiff did not sign the Agreement until June 21, 2009.  (<u>See</u> Agreement at 8.)  This means that Severino had over five months to consult an attorney about the proposed settlement and decide whether he wished to surrender claims for other incidents occurring before January 8, 2009.  In addition, the Agreement states that Severino shall have at least twenty-one days to consult with an attorney and other advisers about the specific written document.  (<u>Id.</u>)  Severino does not claim that he did not have sufficient time to review the document.  Rather, he signed it.  (<u>Id.</u>)  Nor does he allege fraud, undue pressure, or incompetency.

The Court, moreover, does not find the Agreement ambiguous. It covers the Sayreville Police Department and its employees, representatives, and agents.  (Agreement at 1.)[2]  It states that Plaintiff "hereby releases and forever discharges" them from "any and all actions, causes of action, suits, claims, charges or complaints" of which "Plaintiff has, may have, or claims to have against any of them for everything that has occurred up to January 8, 2009, the day of the Settlement Conference."  (Id. at 4.)  It further notes that "Plaintiff acknowledges that . . . [it] is not limited to claims set forth in the Lawsuit."  (Id.) Thus, viewing all evidence in favor of the non-moving party, there is no material fact at issue with respect to the Agreement, and summary judgment must be granted in favor of Sayreville, Chief Szkodny, and the Patrolmen with respect to Severino's claims that arose prior to January 8, 2009, namely counts one, two, four, five, and six.  See Schweitzer v. Equifax Info. Serv's LLC, No. 08-478, 2010 WL 3809891, at *2 (W.D. Pa. Sept. 21, 2010)

---

[2] The Agreement does not specify "Borough of Sayreville," but this is not significant because "[i]n New Jersey a municipal police department is not an entity separate from the municipality, N.J. Stat. Ann. § 40A:14-118 (municipal police department is 'an executive and enforcement function of municipal government')."  Adams v. City of Camden, 461 F.Supp.2d 263, 266 (D.N.J. 2006) (citing McGovern v. Jersey City, No. 98-5186, 2006 WL 42236 at *7 n.4 (D.N.J. Jan. 6, 2006) (police departments are administrative arms of local municipalities, not separate entities)).  Moreover, the Agreement states that Severino also releases, among others, "parents, owners, officers, directors, shareholders."  (Agreement at 4.)

(granting summary judgment to defendants because plaintiff signed unambiguous settlement agreement barring asserted claims).

**B.   Count Three - Malicious Prosecution**

Severino does not specify whether he alleges malicious prosecution under Section 1983, state law, or both.  (See Compl. at 4.)[3]  To prove malicious prosecution under Section 1983 when the claim arises under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).  The second element of malicious prosecution, favorable termination, is established when the plaintiff is "innocent of the crime charged in the underlying prosecution."  Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000); see also Freeman v. State, 347 N.J.Super. 11, 27 (N.J. App. Div. 2002) ("The inquiry into whether a termination was favorable focuses on whether it was dispositive as to the accused's

---

[3] Severino cites the Fourth Amendment in his prayer for relief, but originally brought this action in state court.  Thus, the Court will consider both possibilities.

innocence of the crime for which they were charged."). "If the prosecutor drops the charges as part of a compromise with the accused, the accused will fail the favorable termination prong . . . ." Pittman v. Metuchen Police Dep't, No. 08-2373, 2010 WL 4025692, at *7 (D.N.J. Oct. 13, 2010).

Under New Jersey law, "[a] malicious prosecution action arising out of a criminal prosecution requires proof: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." Campanello v. Port Auth. of N.Y. & N.J., No. 07-4929, 2010 WL 3429571, at *2 (D.N.J. Aug. 27, 2010) (citing Lind v. Schmid, 67 N.J. 255, 262 (1975)). It is well settled that in circumstances where a criminal charge is withdrawn or a prosecution is abandoned pursuant to an agreement or compromise with the accused, the termination is viewed as indecisive and insufficient to support a cause of action for malicious prosecution. Mondrow v. Selwyn, 172 N.J.Super. 379, 384 (N.J. App. Div. 1980); Thomas v. N.J. Inst. of Tech., 178 N.J.Super. 60, 61 (N.J. Law Div. 1981).

Severino claims he was acquitted, but has not provided any evidence of the outcome of that proceeding. (See Compl. at 4; Pl. Opp'n at 2.) The Court thus cannot determine if he was indeed found not guilty, or if the charges against him were

11

simply dropped without acquittal.  The latter would prevent Severino from fulfilling the favorable termination prong.  See Pittman, 2010 WL 4025692, at *7.  Moreover, as far as state law is concerned, even if the prosecution ended in Severino's favor, he only filed a tort claims notice against the Admin Defendants (discussed below), not for malicious prosecution, following the November 2009 court hearing wherein he was allegedly acquitted. (See Notice of Claim.)  Ultimately, however, and with respect to both causes of action, Severino has not met his burden of showing Defendants acted with malice.

"Malice . . . is defined as the 'intentional doing of a wrongful act without just cause or excuse.'"  LoBiondo v. Schwartz, 199 N.J. 62, 94 (2009) (citing Jobes v. Evangelista, 369 N.J.Super. 384, 398 (N.J. App. Div. 2004)).  "It requires proof that the act was wrongful in the sense that it would, 'in the ordinary course . . . infringe upon the rights of another' and cause damage to that person's property or trade."  Id.  Where a plaintiff lacks direct proof that a defendant intentionally instituted an action against a plaintiff without just cause or excuse, "malice may be inferred from want of probable cause." Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 395 (2009). However, "a plaintiff cannot simply point to the absence of probable cause as sufficient proof of the required element of malice," and "it is not unreasonable to require that plaintiff,

on a defendant's motion for summary judgment, produce at least some extrinsic evidence of malice." Id. at 396 (citation omitted). "Thus, courts have required that 'a showing of actual malice . . . include at least some extrinsic evidence of malice, rather than relying only upon inference.'" Pittman, 2010 WL 4025692, at *8 (granting summary judgment in defendants' favor on malicious prosecution claim where plaintiff failed to show favorable termination or lack of probable cause, and proffered no extrinsic evidence of malice).

Severino, here, has presented no evidence indicating that Defendants acted with malice by instituting a criminal action against him. He only alleges in the Complaint that "[t]he prosecution . . . was done maliciously and with intent to harm the plaintiff." (Compl. at 4.) Thus, even assuming the case terminated in Severino's favor, he has failed to point to any extrinsic evidence of malice in the record to support an inference of malice. See Pittman, 2010 WL 4025692, at *8. The Court will therefore grant summary judgment in favor of Defendants on the malicious prosecution claim in count three.

### III. Federal Claims against Admin Defendants

Severino alleges abuse of process, retaliatory actions, and due process violations in count seven. (Compl. at 6-7.) Severino brings these claims against the Admin Defendants in both their official and individual capacities.

13

### A.   Official Capacity

"[A] lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them." Ray v. Twp. of Warren, No. 07-2812, 2009 WL 3074776, at *8 (D.N.J. Sept. 23, 2009) (citing McMillian v. Monroe Cnty., 520 U.S. 781 (1997)). "Consequently, in an official capacity suit, the plaintiff must be able to show that the policy or custom of the municipality 'played a role in the violation of federal law.'" Izquierdo v. Sills, 68 F.Supp.2d 392, 412-13 (D. Del. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 n.55 (1978))). Here, Severino has not provided any evidence of a municipal policy or custom governing the actions of the Admin Defendants. See Berg v. Cnty. of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (citing Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)). Thus, the Court will grant the motion for summary judgment as to Severino's claims against the Admin Defendants in their official capacities.

### B.   Individual Capacity

#### 1.   Personal Involvement

The Court is initially concerned that Severino has not shown the Admin Defendants' personal involvement in the constitutional harm he allegedly suffered, though Defendants vaguely allude to this concern. (Def. Br. at 15 ("plaintiff does not specify how

14

Sayreville Municipal Court employees Solinski and Lesinski had anything to do with the foregoing").)  It is well settled that "[an individual government] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)); see also Rizzo v. Goode, 423 U.S. 362, 377 (1976) (rejecting respondeat superior liability under § 1983). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho, 423 F.3d at 353.  Such allegations must be made with "appropriate particularity." Rode, 845 F.2d at 1207; see also McKnight v. Baker, 415 F.Supp.2d 559, 562 (E.D. Pa. 2006) (where plaintiff was "unable to establish any facts evidencing defendants' 'personal involvement' in the handling of his alleged petition for visitation").

Severino alleges meeting with one or more of the Admin Defendants on October 9, 2009, but he does not allege that "Dave" spoke to either of them when he allegedly called the Municipal Court on November 2, that either of them was specifically tasked with rescinding Severino's suspension, or that either of them somehow specifically refused to fulfill the alleged order or interfered with someone else fulfilling it.  (See Compl. at 6-7; Pl. Opp'n at 4-6.)  Severino has also not alleged that Solinski

and Lesinski are the only two people who could possibly have been responsible with complying with such a task.  Thus, the Court determines that Severino has not shown that the Admin Defendants personally refused to comply with any judicial order.[4]

Even if Severino has sufficiently shown the personal involvement of the Admin Defendants, various immunities bar the action against them here.

### 2.  Quasi-Judicial Immunity

The Admin Defendants argue they are entitled to quasi-judicial immunity.  (Def. Br. at 15.)  "It is well-settled that a judge is entitled to absolute immunity for all acts committed . . . including grave procedural errors," unless he acts without any colorable claim of jurisdiction.  Zapach v. Dismuke, 134 F.Supp.2d 682, 696 (E.D. Pa. 2001) (citing Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)).  Such immunity cannot be overcome by allegations of bad faith or malice.  See Mireles v. Waco, 502 U.S. 9, 11 (1991); Stump, 435 U.S. at 356-57; Pierson v. Ray, 386 U.S. 547, 553-55 (1967); Gallas v. Supreme Ct. of Pa., 211 F.3d

---

[4] Moreover, it appears the procedure is for the Municipal Court to forward information to the Department of Motor Vehicles ("DMV") to ultimately restore Severino's license.  N.J.S.A. § 2B:12-31.  Severino's Notice also instructed him to "contact the DMV with proof of satisfaction of the fine and penalties imposed by the court to determine if your driving privileges may be restored."  (Notice of Suspension.)  The Court assumes Severino could have done this with the order "Dave" allegedly procured. It is also not clear how long this process should take, given the two week period between the alleged order to rescind and when Severino was actually pulled over.  (See Pl. Opp'n.)

760, 768 (3d Cir. 2000).  Court personnel are also shielded by
absolute immunity from liability.  See Pierson, 386 U.S. at
553-55; Waits v. McGowan, 516 F.2d 203, 205 (3d Cir. 1975).
Judicial or quasi-judicial immunity also applies to court staff
who are acting in their official capacities.  See Marcedes v.
Barrett, 453 F.2d 391, 391 (3d Cir. 1971) (holding that judicial
or quasi-judicial immunity applied to clerk of courts, a
supervisor on the staff of the clerk of courts, an administrative
assistant to the presiding judge, and a court reporter); see also
Davis v. Phila. Cnty., 195 F.Supp.2d 686, 688 (E.D. Pa. 2002).

     In light of these cases, the court in El-Bey v. Peer, No.
05-3765, 2006 WL 231627, at *6 (D.N.J. Jan. 30, 2006) dismissed
all claims against court personnel defendants.  However, the
Third Circuit Court of Appeals has noted that "[a]bsolute
immunity does not apply in every action against a judge or court
personnel.  Rather, 'it [is] the nature of the function
performed, not the identity of the actor who performed it, that
informs[ ][an] immunity analysis.'"  Kwasnik v. LeBlon, 228
Fed.Appx. 238, 243 (3d Cir. 2007) (citing Forrester v. White, 484
U.S. 219, 229 (1988)).  "When judicial immunity is extended to
officials other than judges, it is because their judgments are
'functional[ly] comparab[le]' to those of judges-that is, because
they, too, 'exercise a discretionary judgment' as a part of their
function."  Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436

17

(1993) (citations omitted); see also Tucker v. I'Jama, 173

Fed.Appx. 970, 972 (3d Cir. 2006) (remanding for consideration of

whether the accused clerk employed the kind of judgment protected

by judicial immunity); McKnight v. Baker, 415 F.Supp.2d 559, 563

n.6 (E.D. Pa. 2006) (court not persuaded by defendant's quasi-

judicial immunity argument where "both defendants stated that

their duties entail no judicial discretion").

The exact nature of the accusations of wrongdoing against

the Admin Defendants here are not clear.  To the extent their

scheduling activities were erroneous, both notices (Notice of

Suspension, Notice of Court Date) were ordered by a judge and

simply executed by the Admin Defendants, and thus they are

covered by quasi-judicial immunity.  See Gallas v. Supreme Ct. of

Pa., No. 96-6450, 1997 WL 256972, at *11-12 (E.D. Pa. May 15,

1997), aff'd, 211 F.3d 760 (3d Cir. 2000).  To the extent

Severino alleges the Admin Defendants failed to restore his

driver's license, the Court does not have any information as to

the contents of the discussion between "Dave" and the Municipal

Court clerk's office.  If it consisted of a request to reconsider

Severino's case and to give him a new hearing after he missed his

court date, then their acts appear discretionary and judicial in

nature, and thus also entitled to quasi-judicial immunity.  See

id.

Assuming, on the other hand, that "Dave" somehow actually caused an order to issue (leaving aside for a moment that Severino has provided no evidence of such an order), and the Admin Defendants thus failed to execute an alleged order by the Superior Court, this "ministerial" or "administrative" function might not qualify for quasi-judicial immunity.  See id. at *10; Mosley v. Bass River Mun. Ct., No. 04-4511, 2006 WL 2264835, at *3 (D.N.J. Aug. 7, 2006) (granting quasi-judicial immunity only for discretionary actions, not ministerial ones).  However, here the Admin Defendants are also protected by qualified immunity.

### 3.   Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The two-step test for qualified immunity examines whether, "[t]aken in the light most favorable to the party asserting the injury," an official's conduct violated a constitutional right and if so, whether that right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Courts have the discretion to address the two inquiries in either order.

19

<u>Pearson v. Callahan</u>, 129 S.Ct. 808, 818 (2009).  The answers for
both must be in the affirmative for the suit to go forward; if a
constitutional right was not violated, or even if it appears it
was, if that right was not clearly established, the defendant is
entitled to summary judgment.  <u>See</u> <u>id.</u> at 820 ("There will be
cases in which a court will rather quickly and easily decide
there was no violation of clearly established law before turning
to the more difficult question whether the relevant facts make
out a constitutional question at all.")

    Severino here has not presented enough evidence to raise an
issue of fact as to whether a constitutional right was violated.
To the extent that the failure to rescind Severino's driver's
license suspension might violate a constitutional right, he
provides no evidence that he was actually entitled to this right.
Though it appears there was at least some instruction or
negotiation resulting in a new court date, Severino does not
demonstrate that such an order, by the Superior Court or
otherwise, also provided for the immediate rescission of his
suspension.[5]  Nor does Severino provide any affidavit from "Dave"
attesting to ordering or obtaining an order directing the
Sayreville Municipal Court to rescind Severino's suspension.

---

    [5] As opposed to the restoration of driving privileges
remaining contingent upon satisfaction of the requirements
imposed at the new court date, as stated in his original Notice
of Suspension.  (<u>See</u> Notice of Suspension.) <u>See</u> N.J.S.A. §
2B:12-31.

Thus, as the Court cannot even conclude that Severino had a right
to the rescission of his driver's license suspension in November
2009, it cannot find that any constitutional right was violated,
if one exists.  <u>See</u> <u>Lusick v. Lawrence</u>, 378 Fed.Appx. 118, 120
(3d Cir. 2010) (stating that a "bureaucratic blunder" is "surely
not a federal due process violation").  Therefore, Severino
cannot overcome the Admin Defendants' qualified immunity, and
cannot succeed on his due process claim against them under
Section 1983.  Thus, judgment will be entered in favor of the
Admin Defendants on the federal claim in count seven.

## IV. State Law Claims Against Admin Defendants

Severino also contends in count seven that the Admin
Defendants made a mistake with his court notice, that his
attempts to deal with his subsequent warrant met with "a run
around and an attitude and nastiness from the lady, who refused
to give her name," that the "Sayreville court clerks" lied to
"Dave at the Municipal Division," and that "[a]s a result of the
Court administrators blunt refusal to correct their own
mistakes," they violated his right of "access to the courts and
did so in retaliation."  (Compl. at 6-7.)  Because judgment is
entered against Severino and in favor of the Admin Defendants on
all federal claims asserted against them in count seven, the
Court declines to exercise supplemental jurisdiction over
Severino's state law claims in count seven for "abuse of process"

21

and "retaliatory actions."  See 28 U.S.C. § 1367(c)(3);

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

### CONCLUSION

The Court, for the reasons stated supra, will grant
Defendants' motion for summary judgment on counts one through
six, and the federal claims of count seven.  Judgment will be
entered in favor of Defendants on counts one through six and the
federal claims of count seven.  The Court will decline to
exercise jurisdiction over the state law claims in count seven
and will remand the action insofar as it concerns those claims to
state court.  The Court will issue an appropriate order and
judgment.


                                    s/ Mary L. Cooper
                             **MARY L. COOPER**
                             United States District Judge


Dated:    April 27, 2011